# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
## CEDAR RAPIDS DIVISION

JORGE GONZALEZ OCHOA,

       Petitioner,

vs.

BRIAN D. GARDNER, et al.,

       Respondents.

No.  C26-134-LTS-KEM

**MEMORANDUM
OPINION AND ORDER**

## *I.     INTRODUCTION*

This case is before me on petitioner Jorge Gonzalez Ochoa's petition (Doc. 1) for a writ of habeas corpus under 28 U.S.C. § 2241.  Gonzalez Ochoa is an alien being held at the Linn County Jail as his removal proceedings are ongoing.  *See* Docs. 1, 1-4.  In an initial review order (Doc. 3), I directed Respondents (collectively, the Government)[1] to respond to the petition, which they have done (Doc. 7).  Gonzalez Ochoa has replied (Doc. 11).  Oral argument is not necessary.  *See* LR 7(c).

## *II.     BACKGROUND*

Gonzalez Ochoa is a Colombian national who arrived in the United States in October 2024 without having been admitted.  Doc. 1 at ¶ 12; Doc. 10-2 at ¶ 12.  Soon after he crossed the border into the United States, he was encountered by immigration officials who detained him for expedited removal.  Doc. 1 at ¶ 12; Doc. Doc. 10-1 at ¶ 14.  However, citing his flight from Colombia because of threats made on his life, immigration officials referred Gonzalez Ochoa for a credible fear interview.  Doc. 1 at

---

[1] Although the Government's response was filed only on behalf of the federal respondents and not the state employees (Doc. 7 at 1 n.1), this order will apply to all respondents with equal force.

¶¶ 14, 24; Doc. 10-1 at ¶ 14. In that interview, officials found Gonzalez Ochoa did not meet the standard for credible fear and issued again an expedited removal order. Doc. 1 at ¶ 25; Doc. 10-1 at ¶¶ 15–17. Instead of proceeding with the expedited removal, however, the Department of Homeland Security (DHS) exercised its discretion to vacate the order and pursue removal proceedings under 8 U.S.C. § 1229a. Doc. 1 at ¶ 26; Doc. 10-1 at ¶ 18. Treating Gonzalez Ochoa under the discretionary detention scheme of 8 U.S.C. § 1226(a), DHS released him on his own recognizance. Docs. 1-1, 1-2.

Gonzalez Ochoa's release did not provide work authorization. To work, he unlawfully obtained an alien registration number and social security card. Doc. 10-5 at 1, 6–7 (citing 28 U.S.C. § 1546(a)). In September 2025, plain-clothed Immigration and Customs Enforcement (ICE) agents forcefully detained Gonzalez Ochoa and cancelled his removal proceedings. Doc. 10-1 at ¶¶ 18, 20, 22, 24. A grand jury in the Southern District of Iowa later indicted Gonzalez Ochoa for unlawfully obtaining the above-described documents. Doc. 10-5. He ultimately pleaded guilty and was sentenced to time served plus a day. Doc. 1 at ¶¶ 33–35; Doc. 10-5.

In December 2025, while Gonzalez Ochoa's criminal case was ongoing, he was released on a pretrial bond and, because of an ICE detainer, transferred to ICE custody. Doc. 10-1 at ¶¶ 22, 24. He filed his first writ of habeas corpus in the Southern District of Iowa to contest the legality of that civil detention. Doc. 1 at ¶ 30; Doc. 10-1 at ¶ 26. The court granted his petition in part and ordered that Gonzalez Ochoa receive a bond determination hearing before an immigration judge within seven days of the order. *Gonzalez Ochoa v. McCleary*, 816 F. Supp. 3d 921, 930 (S.D. Iowa 2026). DHS scheduled the hearing for the seventh day but technological issues that day prevented it from happening. Rather than violate the court's order, DHS released Gonzalez Ochoa from custody. Doc. 10-1 at ¶ 28. While released, Gonzalez Ochoa complied with every condition that the court and DHS placed on his release. *See* Doc. 11-2 at 11. After sentencing in Gonzalez Ochoa's criminal case, DHS lodged another ICE detainer and promptly transferred him to the Linn County Jail, where he is presently detained. Doc.

2

1 at ¶ 35.  Gonzalez Ochoa then filed his second petition for a writ of habeas corpus, contending that his renewed civil detention by DHS violates due process.  *Id.*

### III.    STANDARD OF REVIEW

Habeas corpus relief is available to those "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  For relief, a petitioner must prove by a preponderance of the evidence that his detention is unlawful.  *Phongsavanh v. Williams*, 809 F. Supp. 3d 864, 867 (S.D. Iowa 2025).

### IV.    ANALYSIS

It is agreed that, under *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026), Gonzalez Ochoa is presently detained under the mandatory detention provisions of 8 U.S.C. § 1225(b)(2).[2]  Although *Avila* forecloses any statutory right to a bond hearing, it says nothing about the due process rights for those aliens subject to mandatory detention. *Avila*, 170 F.4th at 1140 & n.8 (Erickson, J., dissenting).  Due process ensures that the Government provides due process of law before it deprives an individual of life, liberty or property.  U.S. Const. amend. V.  Aliens have due process rights, even those facing removal proceedings.  *Yamataya v. Fisher* (the Japanese Immigration Case), 189 U.S. 86, 100–01 (1903).[3]  There is no question that Gonzalez Ochoa's civil detention

---

[2] Gonzalez Ochoa concedes as much but preserves the challenge of whether he is properly detained under the discretionary detention scheme of § 1226(a) for further review.  Doc. 1 at 12 n.2.  On the other hand, The Government does not contend that Gonzalez Ochoa's criminal conviction makes him subject to mandatory detention under 8 U.S.C. § 1226(c).  The Government's decision is likely correct given that current precedent forecloses § 1226(a) from applying to Gonzalez Ochoa.  *See Nielsen v. Preap*, 586 U.S. 392, 409 (2019) (§ 1226(c) does not establish a "separate source[] of arrest and release authority," and is instead "simply a limit on the authority conferred by subsection (a)").

[3] To the extent that the Government quotes *DHS v. Thuraissigiam*, 591 U.S. 103, 140 (2020), for the proposition that all aliens receive only those due process rights provided to them by statute, the Government strips the case of meaningful context.  *Thuraissigiam* dealt with the

implicates his liberty interest: "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001); *accord Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). The question is the extent of his rights and the appropriate framework for analyzing the issue.

Gonzalez Ochoa advocates that I adopt the familiar *Mathews*[4] balancing test to weigh "the interest at stake for the individual, the risk of an erroneous deprivation of the interest through the procedures used as well as the probable value of additional or different procedural safeguards, and the interest of the government in using the current procedures rather than additional or different procedures." *Landon v. Plasencia*, 459 U.S. 21, 34 (1982) (citing *Mathews*, 424 U.S. at 334–35). Although the *Mathews* test is the prototypical approach to resolving procedural due process disputes and has been used in the immigration context before, *see id.*, it was never intended as "an all-embracing test for deciding due process claims." *Dusenbery v. United States*, 534 U.S. 161, 168

admission of aliens, not detention, as is made clear by the full quote that the Government offers. *Id.* at 140 ("[A]n alien in respondent's position has only those rights regarding admission that Congress has provided by statute."). Indeed, that petitioner "did not ask to be released" and only sought vacatur of his removal order and an opportunity to apply for asylum. *Id.* at 117–18. Central too, to *Thuraissigiam*, is that due process applies differently to aliens "at the threshold of initial entry," *Thuraissigiam*, 591 U.S. at 107, versus those who have entered the country, "whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693. In *Thuraissigiam*, the petitioner had been spotted attempting to illegally enter the country and was apprehended 25 yards from the border. He therefore had not crossed the threshold of initial entry and thus was entitled to no more procedural rights than those afforded by statute. Others, like Gonzalez Ochoa, who have entered the country, *see* Doc. 7 at 5 (conceding Gonzalez Ochoa has entered the country), are afforded greater protections. *Zadvydas*, 533 U.S. at 693 (collecting cases). In any respect, "[i]t is clear that commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." *Hamdi v. Rumsfeld*, 542 U.S. 507, 530 (2004) (alteration in original) (quoting *Jones v. United States*, 463 U.S. 354, 361 (1983)); *Addington v. Texas*, 441 U.S. 418, 425 (1979) ("This Court repeatedly has recognized that civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protections."). In sum, Gonzalez Ochoa can claim a constitutional right in being free from physical restraint.

4 *Mathews v. Eldridge*, 424 U.S. 319 (1976).

(2002).    Concerning immigration-detention challenges, *Mathews* is not the lead framework.[5] *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1214 (9th Cir. 2022) (Bumatay, J., concurring) (citing *Demore v. Kim*, 538 U.S. 510, 521–31 (2003); *Reno v. Flores*, 507 U.S. 292, 299–315 (1993)).   Perhaps this is because immigration is a unique area in which the judiciary affords the political branches greater leeway in exercising their powers.   *See, e.g.*, *Mathews v. Diaz*, 426 U.S. 67, 80 (1976) ("Congress regularly makes rules that would be unacceptable if applied to citizens."); *Dep't of State v. Muñoz*, 602 U.S. 899, 911 (2024) (the field of immigration is "an area unsuited to rigorous judicial oversight"); *Plasencia*, 459 U.S. at 34 ("[C]ontrol over matters of immigration is a sovereign prerogative, largely within the control of the executive and the legislature."). This deference does not, however, free those branches from any constitutional limitations.

"Detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process." *Demore*, 538 U.S. at 523; *accord Wong Wing v. United States*, 163 U.S. 228, 235 (1896); *Carlson v. Landon*, 342 U.S. 524, 538 (1952).   Still, the Government needs a "special justification" that outweighs an alien's protected liberty interest before civilly detaining the alien.   *Zadvydas*, 533 U.S. at 690.    Special justifications for these detentions include an alien's dangerousness and flight risk, *id.*, which allows immigration officials "time to determine an alien's status without running

---

[5] *Mathews'* place in resolving detentions like Gonzalez Ochoa's is still an open question, including in Iowa's districts.  *Compare Muse v. Mullin*, No. 26-cv-4024, 2026 WL 1008532, at *4 (N.D. Iowa Apr. 14, 2026) (applying the *Mathews* framework), *and Abbas v. Schneider*, No. 26-cv-132, 2026 WL 1079292, at *7 (S.D. Iowa Apr. 17, 2026) (same), *and Almazov v. Williams*, No. 26-cv-80 (S.D. Iowa Apr. 16, 2026), ECF 17 (same), *with Romero v. Brown*, ___ F. Supp. 3d ___, 2026 WL 1021455, at *5 (S.D. Iowa Apr. 15, 2026) (rejecting applicability of *Mathews* framework).  If *Mathews* is the correct methodology for resolving Gonzalez Ochoa's challenge, I would find that he is entitled to a bond hearing in light of his individualized circumstances, as set forth in his petition and uncontested by the Government in its response.

5

the risk of the alien's either absconding or engaging in criminal activity before a final decision can be made." *Jennings*, 583 U.S. at 286.[6]

In contrast to the individualized interest-balancing of an alien's situation that *Mathews* calls for, the Supreme Court appears to accept categorical findings relating to a class of aliens that authorize detention for those in such a class. *See Flores*, 507 U.S. at 313–14 (the only "particularization and individuation" the Government need make for a detained alien juvenile is whether each person fits the regulation). For example, in *Demore*, congressional findings and executive statistics suggesting that deportable criminal aliens had a higher rate of recidivism and absconding supported the mandatory detention of all aliens in that class. *Demore*, 538 U.S. at 518–19, 529. These categorical presumptions need not be particularly strong. In *Carlson*, the Supreme Court accepted no-bond detentions for alien Communists based on a congressional understanding "of [the Communist] attitude toward the use of force and violence." *Carlson*, 342 U.S. at 541. Noteworthy too is the Supreme Court's emphasis that courts cannot superimpose their views on how the political branches should have interpreted their data. *See, e.g.*, *Flores*, 507 U.S. at 315 ("It may well be that other policies would be even better, but 'we are [not] a legislature charged with formulating public policy.'" (alteration in original) (quoting *Schall v. Martin*, 467 U.S. 253, 281 (1984)); *Demore*, 538 U.S. at 528 ("The evidence Congress had before it certainly supports the approach it selected even if other, hypothetical studies might have suggested different courses of action.").

Concerning § 1225(b)(2), the Government offers no class-wide congressional findings to support the mandatory civil detention of every unadmitted alien. *Cf. Santillan Quiroz v. Mullin*, ___ F.4th ___, 2026 WL 1876709, at *17 (10th Cir. June 30, 2026) ("In [*Demore* and *Carlson*], the Government provided some justification for detention, albeit on a categorical or class-wide basis. No such class-wide findings exist [under

---

[6] There may be other special justifications for detention, but the Supreme Court has expressly recognized these two as serving as a basis for detention.

§ 1225(b)(2)] that would justify mandatory detention of every single unadmitted noncitizen."); *Sosnava Rodriguez v. Ortega*, ___ F.4th ___, 2026 WL 1906557, at *14 (5th Cir. July 2, 2026) (in determining that mandatory detention under § 1225(b)(2) violates due process: "the Government has made no showing that 'Congress had before it evidence . . . sufficient to furnish reasonable ground for [this] action'" (alterations in original) (quoting *Carlson*, 342 U.S. at 536)).

Case law does support the detention of applicants for admission when the Government has not yet had an opportunity to assess their dangerousness and flight risk. *See Jennings*, 583 U.S. at 286 ("Congress has authorized immigration officials to detain some classes of aliens during . . . certain immigration proceedings. Detention during those proceedings gives immigration officials time to determine an alien's status without running the risk of the alien's either absconding or engaging in criminal activity before a final decision can be made."); *Wong Wing*, 163 U.S. at 235 ("Proceedings to exclude or expel would be vain if those accused could not be held in custody pending the inquiry into their true character . . . ."). In *Sosnava Rodriguez*, the Fifth Circuit decided that 90 days is sufficient for the Government to probe each alien's character. *Sosnava Rodriguez*, 2026 WL 1906557, at *16.

I need not make any such determination in this case because Gonzalez Ochoa falls within the class of § 1225(b)(2) detainees who were already assessed by the Government and found worthy of release before their re-detentions. These detainees are different from their unevaluated counterparts because the Government previously made findings that supported their release, which lessens any special justification the Government may claim for continually detaining them. In addition, their past release after evaluation confers a separate liberty interest. *See Wolff v. McDonnell*, 418 U.S. 539, 558 (1974); *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025). As such, I have ordered the release of, or bond hearings for, aliens within this group. *See, e.g.*, *Singh v. Mullin*, No. 26-cv-1021846, 2026 WL 1021846, at *4 (N.D. Iowa Apr. 15, 2026), *appeal docketed*, No. 26-2165 (8th Cir. June 12, 2026) (ordering release of petitioner previously

7

released on bond when the Government failed to offer any changed circumstances warranting their re-detention); *Villegas Salazar v. Sheriff of Linn County*, No. 26-cv-98, 2026 WL 1651508, at \*4 (N.D. Iowa June 8, 2026) (ordering bond hearing for petitioner who was previously released on discretionary parole).  Because Gonzalez Ochoa falls within this class, I will grant his habeas petition.

The question then shifts to whether Gonzalez Ochoa must be immediately released or granted a bond determination hearing.  In past cases, my answer has turned on whether the alien's re-detention appears to be a pretextual way to renege on past promises. *Compare Singh*, 2026 WL 1021846, at \*4, *with Villegas Salazar*, 2026 WL 1651508, at \*4.  Here, Gonzalez Ochoa has recently been convicted of unlawfully obtaining identification documents (in contrast to his last habeas petition, filed when he was only accused of that crime).  This development is new information that might affect how a neutral decisionmaker views the risks of releasing him.[7]  Thus, I will order that Gonzalez Ochoa receive a bond determination hearing, requiring that the Government justify his continued civil detention by clear and convincing evidence before a neutral decisionmaker.

## V.    CONCLUSION

For the reasons set forth herein, petitioner Jorge Gonzalez Ochoa's petition (Doc. 1) for habeas corpus is **granted**, as follows:

1.    Respondents are **ordered** to provide Gonzalez Ochoa with a bond determination hearing within **14 days** of this order, at which hearing the Government will

---

[7] Gonzalez Ochoa suggests that his "perfect" performance while on pretrial release, with the court's conclusion he was not a flight risk or danger to the community when it released him, permits the court to exercise its independent judgment and order his immediate release.  Doc. 11 at 3–4.  But a court's release determinations under the Bail Reform Act cannot supplant the agency's independent judgment conferred to it under an independent statute (the Immigration and Nationality Act).  *See Gonzalez Ochoa*, 816 F. Supp. 3d at 929.

have the burden of proving by clear and convincing evidence before a neutral decisionmaker that his continued detention is justified.

2.    If respondents do not provide Gonzalez Ochoa with a bond hearing within 14 days, then he must be immediately released from detention under the same conditions as when he was last released.


**IT IS SO ORDERED** this 14th day of July, 2026.

_____
Leonard T. Strand
United States District Judge

9